**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JUAN PEÑA CRUZ, ANNTONY PEÑA CRUZ, BRIAN ORTIZ, and BYRON RAMIREZ, on behalf of themselves and others similarly situated,<br>*Plaintiffs*,<br>*v.*<br>UNITED NATURAL FOODS, INC.,<br>*Defendant.* | Civ. Action No. 26-CV-5178<br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br>JURY TRIAL DEMANDED |

Plaintiffs, through their undersigned attorneys, Kakalec Law PLLC and the Law Office of Robert D. McCreanor, PLLC, as and for their collective and class action Complaint, allege as follows:

**Preliminary Statement**

1. Juan Peña Cruz, Anntony Peña Cruz, Brian Ortiz, and Byron Ramirez (collectively, "Plaintiffs") worked for United Natural Foods, Inc. ("UNFI" or "Defendant") as "Selectors" in Defendant's food distribution facility located at 525 Neelytown Road in Montgomery, New York (the "Montgomery Facility"). As Selectors, Plaintiffs and others were responsible for filling orders by picking items from throughout the facility and loading them onto pallets which the Selectors navigated throughout the facility by way of electric pallet jacks.

2. Plaintiffs and other Selectors were required to arrive at the UNFI facility between 40 minutes and 20 minutes before the start of their shifts, and sometimes earlier, but were not allowed to clock in until the scheduled start time of their shift. Accordingly, Plaintiffs and other Selectors were not paid for all hours worked each day of their employment with UNFI. Because Plaintiffs and others similarly situated typically worked more than forty (40) hours

per week, this unpaid time—often multiple hours per week—should have been paid at the relevant overtime rate.

3. Plaintiffs and other Selectors were incentivized to work as fast as possible through an incentive pay structure in which Plaintiffs and other Selectors received one dollar ($1.00) more per hour if they achieved a certain level of performance determined solely by UNFI. This additional pay was not discretionary. Defendant, however, did not include this incentive pay in its calculations of the regular rate for Plaintiffs and other Selectors for purposes of paying overtime wages.

4. To remedy these and other legal violations, Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL") on behalf of themselves and other similarly-situated workers at the UNFI warehouses located at the Montgomery Facility. Plaintiffs seek, *inter alia*, their unpaid wages, liquidated damages, and damages for other violations of the New York Labor Law.

**Jurisdiction and Venue**

5. The Court has jurisdiction over Plaintiffs' federal claim pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 201 *et seq.* (FLSA).

6. The Court has jurisdiction over Plaintiffs' pendant state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction). Plaintiffs' state law claims are part of the same case or controversy as Plaintiffs' federal claim.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391. A substantial part of the acts and/or omissions giving rise to the claims alleged in this Complaint occurred within this district.

8. Defendant resides and/or does business in this district.

**Parties**

9. Plaintiff Juan Peña Cruz ("Mr. J. Peña") is an adult who currently resides in New York State.

10. Mr. J. Peña has been employed by UNFI as a full-time Selector at the Montgomery Facility from approximately November 2025 to present, but has been on light duty and intermittent medical leave due to a workplace injury which occurred on approximately December 28, 2025.

11. Mr. J. Peña's primary and native language is Spanish.

12. Plaintiff Anntony Peña Cruz ("Mr. A. Peña") is an adult who currently resides in New York State.

13. Mr. A. Peña was employed by UNFI as a full-time Selector at the Montgomery Facility from approximately November 2025 to approximately February 2026.

14. Mr. A. Peña's primary and native language is Spanish.

15. Plaintiff Brian Ortiz ("Mr. Ortiz") is an adult who currently resides in New York State.

16. Mr. Ortiz was employed by UNFI as a full-time Selector at the Montgomery Facility from approximately December 2025 to approximately February 2026.

17. Mr. Ortiz's primary and native language is Spanish.

18. Plaintiff Byron Ramirez ("Mr. Ramirez") is an adult who currently resides in New York State.

19. Mr. Ramirez was employed by UNFI as a full-time Selector at the Montgomery Facility from approximately March 2024 to approximately June 2025 when he his job position was changed.

20. Mr. Ramirez's primary and native language is Spanish.

21. Plaintiffs worked alongside other hourly-paid, non-exempt employees of UNFI at the Montgomery Facility.

22. Defendant United Natural Foods, Inc. is business corporation organized under the laws of Delaware and authorized to do business in New York State, with a corporate address of 15 Park Row West, Suite 302, Providence, RI 02903-1184.

23. According to its website, UNFI is "one of the largest publicly traded wholesale distributors of healthier food options across North America." Defendant services "over 43,000 customer locations with 200,000 different products."

24. UNFI employs more than 29,000 employees across 50 "Distribution Centers" and its corporate offices.

25. At the Montgomery Facility, UNFI was primarily engaged in packing food and food supplies for delivery to retail grocers and other food-service providers.

26. At all times relevant to this action, UNFI has been an enterprise engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203(r)–(s).

27. UNFI had gross sales made or business done in excess of $500,000 annually for each of the years from 2020 through the present.

28. At all times relevant to this action, Defendant UNFI was an "employer" of Plaintiffs and others similarly situated as defined by the FLSA and NYLL.

29. At all times relevant to this action, Plaintiffs and others similarly situated have been non-exempt "employees" of Defendant as defined by the FLSA and NYLL.

30. At all times relevant to this action, Defendant employed Plaintiffs and others similarly situated within the meaning of the FLSA and NYLL.

31. Defendant's registered agent for purposes of service of process is C T Corporation System, 28 Liberty Street, New York, NY 10005.

**Factual Allegations**

32. On a daily basis during their employment at UNFI, Plaintiffs worked alongside other similarly-situated employees who were hourly-paid, non-exempt employees working as Selectors.

33. During the day shift at the UNFI Montgomery Facility, which typically began at either approximately 9:00 a.m. or, for a small number of Selectors, at 8:30 a.m., Defendant employed approximately 100 Selectors.

34. Each day, Selectors were responsible for filling customer orders by picking items from throughout the facility and loading them onto pallets which the Selectors navigated throughout the facility by way of ride-on electric pallet jacks—devices they needed to move materials.[1]

35. Selectors' work assembling pallets of grocery items facilitated the efficient shipment of interstate goods.

36. Much of the perishable food and grocery items that Plaintiffs and others similarly situated picked and assembled into pallets was shipped to the Montgomery Facility from outside New York State.

37. The pallets of assembled food were then shipped from the Montgomery Facility and delivered both within and outside of New York State.

38. The products that Selectors picked and assembled into pallets left the Montgomery Facility as quickly as possible after their arrival to be delivered to Defendant's customers.

39. By packing grocery items that came from outside New York, Plaintiffs and others similarly situated played a direct and necessary role in the flow of goods across state borders.

*Pre-Shift Unpaid Work*

40. Selectors were expected to fill orders as quickly as possible and were punished if they failed to hit certain percentage quotas. Accordingly, Selectors were instructed and expected to have all of their equipment in order before the official start of their scheduled shift.

---

[1] A ride-on or stand-up electric pallet jack is a motorized device that allows an operator to transport a pallet of goods while standing on a platform on the back of the device. *See, e.g.*, *Morales v. C&S Wholesale Grocers, Inc.*, No. 18-CV-3625 (LTS) (GWG), 2023 WL 5047893, at *3 (S.D.N.Y. Aug. 8, 2023).

41. To be ready to begin selecting items at their shift "start time," Plaintiffs and others similarly situated were required to obtain the tools necessary for their work and to complete checklists to ensure that the tools were operational prior to their shift "start time."

42. Before the official start of their scheduled shifts at 9:00 a.m., Plaintiffs and others similarly situated were also required to pick up scanners which Selectors used when adding product to pallets. The window from which supervisors distributed scanners opened at approximately 8:30 a.m.

43. To obtain scanners, Plaintiffs and other Selectors often had to wait in line with other workers for a period of up to approximately eight to ten minutes.

44. For the small number of Selectors working shifts with an official start time of 8:30 a.m., they would often have to search for a supervisor to obtain their scanners prior to the shift start.

45. Because some scanners were in poor repair, obtaining a functional scanner became increasingly difficult as the official shift start time approached. As a result, Plaintiffs and others similarly situated were effectively pushed to arrive as early as possible in order to secure functional scanners.

46. Before the official start of their scheduled shifts, Plaintiffs and others similarly situated were also required to locate and pick up ride-on electric pallet jacks and ensure that the pallet jacks were working correctly. Because many pallet jacks were in poor repair, finding a functional pallet jack became increasingly difficult as the official shift start time approached. As a result, Plaintiffs and others similarly situated were effectively pushed to arrive as early as possible in order to secure functional pallet jacks.

47. Before the official start of their scheduled shifts, Plaintiffs and others similarly situated were required to fill out an extensive checklist of at least twelve (12) items, which UNFI provided

in paper form and via a smartphone application. This checklist included verifying that the pallet jacks they would be using had brakes and forklifts in working order, and that the pallet jacks turned correctly.

48. If a scanner or electric pallet jack was not in full working order, Plaintiffs and others similarly situated were required to return the equipment and obtain replacements or to seek the assistance of UNFI's technologists to service the equipment, all before the official start of their scheduled shifts.

49. To meet UNFI's demands and complete this pre-shift work, Plaintiffs and others similarly situated arrived up to one hour before the official start of their scheduled shifts.

50. UNFI maintained an electronic timekeeping system for recording hours worked by Plaintiffs and others similarly situated, who punched into an electronic clock at the beginning and end of their workdays.

51. Pursuant to Defendant's policy, Plaintiffs and others similarly situated were not permitted to clock in when they actually began performing their duties—upon arrival—in advance of the official start of their scheduled shift. If Plaintiffs and other Selectors attempted to clock in more than approximately five minutes before the official start of their scheduled shifts, they were given an oral warning ("Strike 1"). If a Selector attempted to clock in more than five minutes before the official start of their scheduled shift a second time, he was given a written warning ("Strike 2"). If a Selector attempted a third time to clock in more than five minutes before the official start of his scheduled shift, he was terminated.

52. Similarly, if a Selector arrived at the Montgomery Facility with insufficient time to complete his pre-shift work, such as 8:50 a.m. before the 9:00 a.m. shift, Defendant issued an oral

warning. This was followed by a written warning if it happened a second time, and finally termination upon the third instance.

53. Pursuant to Defendant's policy, it was not possible for Plaintiffs and others similarly situated to complete the pre-shift work required by Defendant after they were permitted to clock in.

54. Pursuant to Defendant's policy, Plaintiffs and others similarly situated were not paid for this pre-shift work, which was typically at least twenty-to-sixty (20–60) minutes each day.

55. Plaintiffs and others similarly situated worked at least four days per week. Selectors whose productivity was deemed sufficiently high by Defendant worked five or six days per week.

56. The hours worked per day for Plaintiffs and other Selectors varied based on the demand of Defendant's business. Typically, Plaintiffs and others similarly situated whose shifts were scheduled to begin at 9:00 a.m. worked until at least 7:30 p.m.

57. Sometimes, in order to finish filling pallets, Plaintiffs and others similarly-situated were compelled by Defendant to work much later, until as late as approximately 1:00 or 2:00 a.m.

58. Infrequently, Plaintiffs and others similarly situated ended their shifts before 7:30 p.m.

59. Plaintiffs and others similarly situated were told that they would receive one fifteen-minute break in the morning and then a lunch break of 30 minutes maximum.

60. Sometimes Plaintiffs and others similarly-situated were given a fifteen-minute break in the afternoon.

61. Plaintiffs and others similarly situated often were not permitted to take a full thirty minutes for lunch, as supervisors and Defendant's productivity policies compelled them to work as much as possible as quickly as possible.

62. Accordingly, Plaintiffs and others similarly situated typically worked at least four days per week for more than ten hours per day.

63. As a result, the pre-shift hours worked—which were not compensated, pursuant to Defendant's policy—should have been paid at the relevant overtime rate.

*Incentive Pay*

64. In advance of the official start of their scheduled shifts each day, Defendant provided Plaintiffs and other Selectors a list of orders they were required to fill that day by selecting items and placing them on pallets which they navigated around the facility.

65. To incentivize Plaintiffs and others similarly situated to work as quickly as possible, Defendant implemented an incentive pay structure in which Selectors earned one dollar ($1.00) more per hour if they accomplished a certain percentage of productivity established by UNFI.

66. The incentive pay which Plaintiffs and others similarly situated were paid and should have been paid does not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)–(8).

67. Plaintiffs and others similarly situated regularly worked in excess of forty (40) hours per week and were paid for some of their overtime hours but not for all overtime hours worked.

68. However, Defendant did not incorporate incentive pay and other non-discretionary remuneration into its calculation of the regular rate for purposes of paying overtime wages to Plaintiffs and others similarly situated.

69. As non-exempt employees, Plaintiffs and others similarly situated are entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

70. Throughout Plaintiffs' employment with UNFI, Defendant willfully failed to properly incorporate Plaintiffs' incentive pay into the "regular rate" for purposes of lawful overtime calculation.

71. As a result, Defendant willfully underpaid the Plaintiffs and others similarly situated during each week that they worked more than 40 hours.

*Other Violations*

72. Defendant failed to furnish proper and accurate wage statements to Plaintiffs and others similarly situated as required by NYLL § 195(3).

73. Defendant also failed to provide Plaintiffs and others similarly situated with proper and accurate notices which included all of the information required by NYLL § 195(1), including the correct overtime rate.

74. Throughout their employment, Plaintiffs and others similarly situated were furnished with wage statements that did not accurately reflect the time worked because they did not include the pre-shift work for which Defendant did not compensate them.

75. Similarly, the wage statements provided to the Plaintiffs did not include overtime calculated at the proper rate.

76. Instead, Defendant obscured the actual hours worked by Plaintiffs and others similarly situated, and included an incorrect overtime rate.

77. Upon information and belief, any notices of pay rate and other information provided pursuant to NYLL § 195(1) failed to include the proper and legal overtime rate.

78. Had the wage statements and notices Defendant provided to Plaintiffs and others similarly situated accurately reflected all the time worked and the proper overtime rate, the wage theft which Plaintiffs and other similarly situated workers experienced would have been prevented.

79. Because Defendant failed to comply with NYLL § 195's requirements and this wage theft was not prevented in the first place, Plaintiffs and others similarly situated were deprived of

the opportunity to spend their wages on necessary expenses, including household expenses, food, housing, utilities, and other items, to save their wages in interest-bearing accounts, to support their families both within and outside of the United States, or to otherwise invest their wages in other ways that could generate additional earnings to support their families.

80. Further, because the wage statements Defendant provided to Plaintiffs and others similarly situated were inaccurate and obscured the actual hours worked and the correct overtime rate, Plaintiffs and other similarly situated workers were not made aware that Defendant was required to pay them for their pre-shift and post-shift work, or to include the incentive pay in the regular rate upon which overtime was calculated.

81. The legal requirement that each wage statement reflect all time worked was enacted, in part, to ensure workers like Plaintiffs and others similarly situated were better informed about their legal right to be paid for all time worked, and at the proper rate.

82. As a result, in part, of Defendant's obscuring the actual time worked and proper overtime rate and Plaintiffs' resulting lack of awareness about their legal rights to be paid for their pre-shift and post-shift time worked and at the proper overtime rate, Plaintiffs and other similarly-situated workers were delayed in learning about and taking action to recover their unpaid wages. Due to the passage of time, the statute of limitations has run on some of the workers' unpaid wage claims.

**FLSA Collective Action Allegations**

83. Plaintiffs bring their FLSA overtime wage claim, the First Cause of Action, as a collective action under the collective action provision of the FLSA as set forth in 29 U.S.C. § 216(b) on behalf of themselves and those individuals who may opt into the "FLSA Collective" defined as: "all current and former employees who worked for UNFI at the Montgomery Facility as Selectors at any time from June 18, 2023 through the date of final judgment in this matter."

84. The current and former employees described above are situated similarly to Plaintiffs within the meaning of FLSA, 29 U.S.C. § 216(b) and, therefore, the First Cause of Action herein may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA.

85. Common proof applicable to Plaintiffs and the other workers will show that Defendant failed to pay wages as required by the FLSA to Plaintiffs and other workers.

86. These causes of action are also maintainable as collective actions pursuant to FLSA, 29 U.S.C. § 216(b), because the prosecution of separate actions by individual members of the FLSA Collective would create a risk of inconsistent or varying adjudications with respect to individual current and former employees which would establish incompatible standards of conduct for Defendant.

87. The names, last-known addresses, email addresses, and cell phone numbers of the proposed FLSA Collective members are available from Defendant. Accordingly, Defendant should be required to provide Plaintiffs with a list – including names, last-known addresses, cell phone numbers, and email addresses if known – of all current and former employees who would be members of the proposed FLSA collective.

88. Notice of and an opportunity to join this lawsuit should be provided to all potential opt-in Plaintiffs both by first class mail to their last-known address and by workplace posting, as

well as by other practicable means including but not limited to email and text messaging, as soon as possible.

**Rule 23 Class Action Allegations**

89. Plaintiffs bring their NYLL claims, the Second, Third, and Fourth Causes of Action, on behalf of themselves and all other similarly-situated individuals ("the NYLL Class") under Rules 23(a), (b)(1), and (b)(3) of the Federal Rules of Civil Procedure. The NYLL Class is defined as "all current and former employees who worked for UNFI at the Montgomery Facility as Selectors from June 18, 2020 through the date of final judgment in this matter."

90. The persons in the NYLL Class identified above are so numerous that any joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendant, upon information and belief, there are more than 400 members of the NYLL Class during the six years prior to the filing of this lawsuit.

91. Plaintiffs are currently unaware of the identities of all of the employees who would be members of the Class, but this information is readily ascertainable from Defendant's records. Accordingly, Defendant should be required to provide Plaintiffs with a list – including last-known addresses, telephone numbers, and email addresses if known – of all Selectors employed by UNFI at the Montgomery Facility from June 18, 2020 and the present.

92. The claims of the named Plaintiffs are typical of the claims of the NYLL Class. Members of the proposed class have all been subject to the same unlawful practices of Defendant, and their claims arise out of these same practices.

93. Plaintiffs and the Class members have the same statutory rights under NYLL and are all non-exempt employees within the meaning of NYLL.

94. Named Plaintiffs and the Class members suffered similar types of damages.

95. The named Plaintiffs' claims are typical of the claims of the Class because, among other things, Plaintiffs were Selectors, and they suffered the same labor law violations as other similarly-situated employees.

96. Plaintiffs' interests are co-extensive with the interests of the Class members, and Plaintiffs have no interests adverse to the Class members.

97. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs' interests do not conflict with the interests of the members of the Class they seek to represent.

98. Plaintiffs understand that, as class representatives, they assume responsibility to the Class to represent its interests fairly and adequately.

99. Plaintiffs have retained counsel experienced in prosecuting class actions and in employment matters. There is no reason why these Plaintiffs and their counsel will not vigorously pursue this matter.

100. Defendant has acted or refused to act on grounds generally applicable to the NYLL Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the NYLL Class as a whole.

101. Questions of law and fact common to NYLL Class as a whole include, but are not limited to, the following:

   a. Whether Defendant is an employer under the FLSA and/or the NYLL;

   b. Whether Defendant unlawfully failed and continues to fail to pay required overtime compensation in violation of FLSA;

   c. Whether Defendant failed to pay Plaintiffs and others similarly situated their promised wages for all hours worked, in violation of NYLL;

d. Whether Defendant unlawfully failed and continues to fail to pay overtime compensation in violation of NYLL;

e. Whether Defendant failed to provide legally required wage statements and notices of pay rate, in violation of NYLL.

102. A class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein – particularly in the context of wage and hour litigation where individual employees lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

103. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the litigation necessitated by Defendant's conduct.

104. Further, it would be difficult for individual members of the Class to effectively obtain on an individual basis redress for the wrongs done to them. If individual actions were to be brought by each member of the Class, the result would be a multiplicity of actions, creating hardships for members of the Class, the Court, and the Defendant.

105. Individualized litigation also presents the potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the Court system.

106. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

107. This case does not present individualized factual or legal issues which would render a class action difficult.

108. In the alternative, the Class may be certified because:

a. the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendant;

b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

**First Cause of Action**
**(FLSA Overtime Compensation Violations)**

109. Plaintiffs reallege and incorporate by reference the foregoing allegations set forth in paragraphs 1 to 108 as if fully set forth herein.

110. Plaintiffs and other similarly-situated workers regularly worked more than 40 hours in a single work week.

111. Defendant willfully failed to pay Plaintiffs and other Selectors an overtime premium of one half of their regular rate for every hour worked above forty (40) each week.

112. Defendant's failure to pay an overtime premium for all hours worked above 40 in a work week violates the FLSA, 29 U.S.C. § 207(a), and its implementing regulations.

113. Plaintiffs and other similarly-situated workers are entitled to their unpaid wages, plus an additional equal amount in liquidated damages, as a consequence of Defendant's unlawful actions and omissions, in accordance with 29 U.S.C. § 216(b).

114. Plaintiffs and other similarly-situated workers are also entitled to attorneys' fees and costs of this action, pursuant to 29 U.S.C. § 216(b).

**Second Cause of Action**
**(NYLL Overtime Compensation Violations)**

115. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 108 as if fully set forth herein. Plaintiffs and other similarly-situated workers regularly worked more than 40 hours in a single work week.

116. Defendant willfully failed to pay Plaintiffs and other Selectors an overtime premium of one half of their regular rate for every hour worked above forty (40) each week.

117. Defendant's failure to pay the required wages as set forth above was willful within the meaning of NYLL §§ 198, 663, and 681.

118. Plaintiffs are entitled to their unpaid wages mandated by NYLL, plus an additional 100 percent as liquidated damages, as a consequence of the Defendant's unlawful actions and omissions, in accordance with New York Labor Law §§ 198, 663, and 681.

119. Plaintiffs also seek, and are entitled to, attorneys' fees incurred by their counsel, costs of Court, and interest.

**Third Cause of Action**
**(NYLL – Failure to Pay Promised Wage for All Hours Worked)**

120. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraph 1 through 108 as if fully set forth therein.

121. Defendant failed to pay Plaintiffs and others similarly situated promised wages for all hours worked, in violation of NYLL § 193.

122. Defendant's failure to pay the required wages as set forth above was willful within the meaning of NYLL §§ 198, 663, 681.

123. Plaintiffs and others similarly situated are therefore entitled to their unpaid wages as mandated by NYLL, plus an additional 100 percent as liquidated damages, as a consequence of the Defendant's unlawful acts and omissions in accordance with NYLL §§ 198, 663, 681.

124. Plaintiffs and others similarly situated also seek, and are entitled to, attorneys' fees incurred by their counsel, costs of Court, and interest.

**Fourth Cause of Action**
**(NYLL – Wage Notice and Wage Statement Violations)**

125. Plaintiffs reallege and incorporate by reference the allegations set forth in paragraphs 1 through 108 as if fully set forth herein.

126. Defendant failed to provide Plaintiffs and others similarly situated with accurate wage statements with every payment of wages which provided all of the information required under NYLL § 195(3).

127. Defendant also failed to provide Plaintiffs and others similarly situated with written notices at the time of hire which included the accurate overtime rate, in violation of NYLL § 195(1)(a).

128. For Defendant's violation of NYLL § 195(3), Plaintiffs and others similarly situated are entitled to $250 for each work day in which this violation continued to occur, in an amount not to exceed $5,000 per person, pursuant to NYLL §198(1-d).

129. For Defendant's violation of NYLL§ 195(1), Plaintiffs and others similarly situated are each entitled to $50 for each work day that this violation continued to occur, in an amount not to exceed $5,000 per person, pursuant to NYLL § 198(1-b)

130. Plaintiffs also seek, and are entitled to, attorneys' fees incurred by their counsel, costs of Court, and interest.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury as to all issues so triable.

**WHEREFORE**, Plaintiffs request that this Court enter an Order:

a. assuming jurisdiction over this action;

b. declaring that Defendant violated the FLSA and New York Labor Law;

c. granting judgment to Plaintiffs and others similarly situated who may opt into this action on their FLSA claims and awarding unpaid wages and an equal amount in liquidated damages;

d. granting judgment to Plaintiffs and others similarly on their NYLL claims and awarding unpaid wages, applicable statutory damages, and liquidated damages as provided for by statute, as well as a 15% increase in any NYLL damages unpaid within 90 days of judgment;

e. awarding Plaintiffs and others similarly situated prejudgment and postjudgment interest as allowed by law;

f. awarding Plaintiffs and others similarly situated their costs and reasonable attorneys' fees; and;

g. granting such further relief as the Court deems just and proper.

DATED: Brooklyn, NY
June 18, 2026

**KAKALEC LAW PLLC**

/s/ Anthony J Damelio III

Anthony Damelio
Patricia Kakalec
Kakalec Law PLLC
26 Court Street, Suite 1612
Brooklyn, NY 11242
(212) 705-8730

Anthony@KakalecLaw.com
Patricia@KakalecLaw.com

Robert McCreanor
Law Office of Robert D. McCreanor, P.L.L.C.
45 Saw Mill River Road
Suite 106
Hawthorne, NY 10532
(845) 202-1833
rmccreanor@rdmclegal.com

*Attorneys for Plaintiffs*